## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**CONNY TEJADA,**

**Plaintiff,**

**vs.**                                                 **Case No.: 8:20-cv-01071**

**SAMUEL RAMZI BOUTROS,**
**KRESS BUILDING, INC.,**
**RAB LAND & DEVELOPMENT, INC.,**
**RAB LAND CONDOMINIUMS, LLC,**
**RAB LAND ENTERPRISES, LLC,**
**RAB LAND HOUSING, LLC,**
**RAB LAND INVESTMENTS, LLC,**
**RAB LAND PROPERTIES, LLC,**
**RAB LAND RENTALS, LLC,**
**and RAB LAND, LLC**

**Defendants.**
_____/

### SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, CONNY TEJADA, by and through undersigned counsel, hereby sues

Defendants, SAMUEL RAMZI BOUTROS, KRESS BUILDING, INC., RAB LAND &

DEVELOPMENT, INC., RAB LAND CONDOMINIUMS, LLC, RAB LAND

ENTERPRISES, LLC, RAB LAND HOUSING, LLC, RAB LAND INVESTMENTS,

LLC, RAB LAND PROPERTIES, LLC, RAB LAND RENTALS, LLC, and RAB LAND,

LLC,[1] and alleges as follows:

---

[1] Defendants KRESS BUILDING, INC., RAB LAND & DEVELOPMENT, INC., RAB LAND CONDOMINIUMS, LLC, RAB LAND ENTERPRISES, LLC, RAB LAND HOUSING, LLC, RAB LAND INVESTMENTS, LLC, RAB LAND PROPERTIES, LLC, RAB LAND RENTALS, LLC, and RAB LAND, LLC will be referred to herein, collectively, at "the Corporate Defendants."

## JURISDICTION AND VENUE

1.     This is an action for monetary damages, attorneys' fees, and costs.

2.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that this is a civil action arising under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq*. ("FLSA").

3.     This Court also has jurisdiction over this action pursuant to 42 U.S.C. § 3613(a) in that this is a civil action arising under the Fair Housing Act of 1968, 42 U.S.C. § 3601 *et seq*.

4.     This Court has supplemental jurisdiction over plaintiff's related claims arising under state laws pursuant to 28 U.S.C. § 1367(a).

5.     Venue is proper in this District under 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## PARTIES

6.     Defendant Samuel Ramzi Boutros ("Boutros") is an individual residing in Pinellas County, Florida.

     a.   Defendant Boutros is a principal and an agent who acts on behalf of RAB Land Properties, LLC within the meaning of the Fair Housing Act.

     b.   is a covered employer as defined by the FLSA, the Florida Minimum Wage Act ("FMWA"), and the Florida Whistleblower Act ("FWA").

     c.   Defendant Boutros employed Plaintiff within the meaning of the FLSA, the FMWA, the FCRA, the FWA, and Title VII.

d.  Defendant Boutros had substantial control over the working conditions of Plaintiff and over the unlawful policies and practices alleged herein at all times relevant to this lawsuit.

e.  Defendant Boutros controlled Plaintiff's terms and conditions of employment by, *inter alia*, determining her compensation.

7.  Defendant KRESS BUILDING, INC. is a Florida corporation with its principal place of business at 475 Central Avenue, M8, St. Petersburg, Pinellas County, FL 33701.

a.  Defendant KRESS BUILDING, INC. is a covered employer as defined by the FLSA, the FMWA, the FCRA, the FWA, and Title VII.

b.  Defendant KRESS BUILDING, INC.  employed Plaintiff within the meaning of the FLSA, the FMWA, and the FWA.

c.  Defendant KRESS BUILDING, INC. had substantial control over the working conditions of Plaintiff and over the unlawful policies and practices alleged herein at all times relevant to this lawsuit.

d.  Defendant KRESS BUILDING, INC. controlled Plaintiff's terms and conditions of employment by, *inter alia*, determining her compensation.

8.  Defendant RAB LAND & DEVELOPMENT, INC. is a Florida corporation with its principal place of business at 475 Central Avenue, M8, St. Petersburg, Pinellas County, FL 33701.

a.  Defendant RAB LAND & DEVELOPMENT, INC. is a covered employer as defined by the FLSA, the FMWA, and the FWA.

b.   Defendant RAB LAND & DEVELOPMENT, INC. employed Plaintiff within the meaning of the FLSA, the FMWA, and the FWA.

c.   Defendant RAB LAND & DEVELOPMENT, INC. had substantial control over the working conditions of Plaintiff and over the unlawful policies and practices alleged herein at all times relevant to this lawsuit.

d.   Defendant RAB LAND & DEVELOPMENT, INC. controlled Plaintiff's terms and conditions of employment by, *inter alia*, determining her compensation.

9.     Defendant RAB LAND CONDOMINIUMS, LLC is a Florida limited liability company with its principal place of business at 475 Central Avenue, M8, St. Petersburg, Pinellas County, FL 33701.

a.   Defendant RAB LAND CONDOMINIUMS, LLC is a covered employer as defined by the FLSA, the FMWA, and the FWA.

b.   Defendant RAB LAND CONDOMINIUMS, LLC employed Plaintiff within the meaning of the FLSA, the FMWA, and the FWA.

c.   Defendant RAB LAND CONDOMINIUMS, LLC had substantial control over the working conditions of Plaintiff and over the unlawful policies and practices alleged herein at all times relevant to this lawsuit.

d.   Defendant RAB LAND CONDOMINIUMS, LLC controlled Plaintiff's terms and conditions of employment by, *inter alia*, determining her compensation.

10.     Defendant RAB LAND ENTERPRISES, LLC is a Florida limited liability company with its principal place of business at 475 Central Avenue, M8, St. Petersburg, Pinellas County, FL 33701.

    a. Defendant RAB LAND ENTERPRISES, LLC is a covered employer as defined by the FLSA, the FMWA, and the FWA.

    b. Defendant RAB LAND ENTERPRISES, LLC employed Plaintiff within the meaning of the FLSA, the FMWA, and the FWA.

    c. Defendant RAB LAND ENTERPRISES, LLC had substantial control over the working conditions of Plaintiff and over the unlawful policies and practices alleged herein at all times relevant to this lawsuit.

    d. Defendant RAB LAND ENTERPRISES, LLC controlled Plaintiff's terms and conditions of employment by, *inter alia*, determining her compensation.

11.     Defendant RAB LAND HOUSING, LLC, is a Florida limited liability company with its principal place of business at 475 Central Avenue, M8, St. Petersburg, Pinellas County, FL 33701.

    a. Defendant RAB LAND HOUSING, LLC is a covered employer as defined by the FLSA, the FMWA, and the FWA.

    b. Defendant RAB LAND HOUSING, LLC employed Plaintiff within the meaning of the FLSA, the FMWA, and the FWA.

    c. Defendant RAB LAND HOUSING, LLC had substantial control over the working conditions of Plaintiff and over the unlawful policies and practices alleged herein at all times relevant to this lawsuit.

    d.  Defendant RAB LAND HOUSING, LLC controlled Plaintiff's terms and conditions of employment by, *inter alia*, determining her compensation.

12.    Defendant RAB LAND INVESTMENTS, LLC, is a Florida limited liability company with its principal place of business at 475 Central Avenue, M8, St. Petersburg, Pinellas County, FL 33701.

    a.  Defendant RAB LAND INVESTMENTS, LLC is a covered employer as defined by the FLSA, the FMWA, and the FWA.

    b.  Defendant RAB LAND INVESTMENTS, LLC employed Plaintiff within the meaning of the FLSA, the FMWA, and the FWA.

    c.  Defendant RAB LAND INVESTMENTS, LLC had substantial control over the working conditions of Plaintiff and over the unlawful policies and practices alleged herein at all times relevant to this lawsuit.

    d.  Defendant RAB LAND INVESTMENTS, LLC controlled Plaintiff's terms and conditions of employment by, *inter alia*, determining her compensation.

13.    Defendant RAB LAND PROPERTIES, LLC is a Florida limited liability company with its principal place of business at 475 Central Avenue, M8, St. Petersburg, Pinellas County, FL 33701.

    a.  Defendant RAB LAND PROPERTIES, LLC is a covered employer as defined by the FLSA, the FMWA, and the FWA.

b.  Defendant RAB LAND PROPERTIES, LLC employed Plaintiff within the meaning of the FLSA, the FMWA, and the FWA.

c.  Defendant RAB LAND PROPERTIES, LLC had substantial control over the working conditions of Plaintiff and over the unlawful policies and practices alleged herein at all times relevant to this lawsuit.

d.  Defendant RAB LAND PROPERTIES, LLC controlled Plaintiff's terms and conditions of employment by, *inter alia*, determining her compensation.

14.  Defendant RAB LAND RENTALS, LLC is a Florida limited liability company with its principal place of business at 475 Central Avenue, M8, St. Petersburg, Pinellas County, FL 33701.

a.  Defendant RAB LAND RENTALS, LLC is a covered employer as defined by the FLSA, the FMWA, and the FWA.

b.  Defendant RAB LAND RENTALS, LLC employed Plaintiff within the meaning of the FLSA, the FMWA, and the FWA.

c.  Defendant RAB LAND RENTALS, LLC had substantial control over the working conditions of Plaintiff and over the unlawful policies and practices alleged herein at all times relevant to this lawsuit.

d.  Defendant RAB LAND RENTALS, LLC controlled Plaintiff's terms and conditions of employment by, *inter alia*, determining her compensation.

15.     Defendant RAB LAND, LLC is a Florida limited liability company with its principal place of business at 475 Central Avenue, M8, St. Petersburg, Pinellas County, FL 33701.

  a.  Defendant RAB LAND, LLC is a covered employer as defined by the FLSA, the FMWA, and the FWA.

  b.  Defendant RAB LAND, LLC employed Plaintiff within the meaning of the FLSA, the FMWA, and the FWA.

  c.  Defendant RAB LAND, LLC had substantial control over the working conditions of Plaintiff and over the unlawful policies and practices alleged herein at all times relevant to this lawsuit.

  d.  Defendant RAB LAND, LLC controlled Plaintiff's terms and conditions of employment by, *inter alia*, determining her compensation.

16.     Defendant Boutros is a principal and an agent of all of the Corporate Defendants.

17.     The Corporate Defendants' operations are so intertwined in that they act as a single entity and joint employer.

18.     Plaintiff CONNY TEJADA ("Ms. Tejada") is an individual who resides in Pinellas County, Florida.

## FACTUAL ALLEGATIONS

19.     On or around May 24, 2019, Ms. Tejada entered into an agreement with RAB Land Properties, LLC for the rental of a residential dwelling located at 511 4th Avenue S., Apt 3, St. Petersburg Florida 33701. A true and correct copy of the lease provided to Mr. Tejada by Mr. Boutros is attached as Exhibit 1.

20.     The rental property belonged to and/or was operated by the Defendants, including, in particular, RAB Land Properties and Samuel Boutros.

21.     Throughout the course of Plaintiff's tenancy in Defendants' rental property, Defendants required Plaintiff to make rent payments payable to RAB Land Properties, LLC & Samuel Boutros, who is the managing member of RAB Land Properties.

22.     At least as early as December 2019, Ms. Tejada encountered financial difficulties that affected her ability to pay rent.

23.     On or around December 3, 2019, Plaintiff contacted Boutros to inform him that she was $100 short of her rent payment, but that she would pay the full amount by December 6, 2019.

24.     Boutros indicated that it was not a problem and he accepted payment with no late fees.

25.     In January 2020, Plaintiff contacted Boutros indicating that she could not afford to continue residing in the apartment because she was experiencing financial difficulties and could not afford the rent payments.

26.     Plaintiff also expressed that she was afraid of having an eviction action on her record if she failed to meet her obligation to pay rent to the Defendants.

27.     Plaintiff indicated that she would be willing to leave the unit by February 1, 2020, and she begged Boutros to allow her to pay whatever outstanding amounts were due to him over time rather than filing an eviction action against her.

28.     Plaintiff explained to Boutros that she had recently moved to Florida and had been working with a property management company showing rental properties to potential customers.   The company, however, had removed two buildings from its

inventory in or around November 2019 and her income had significantly decreased as a result.

29.     Boutros agreed to try and market the unit for rent by February or March 2020 as long as Plaintiff paid the rent due for January and February 2020.

30.     Plaintiff voluntarily vacated the premises so that the Defendants could make the unit available for rent and thus offset any rent unpaid by the Plaintiff.

31.     Throughout January and February of 2020, Plaintiff maintained communication with Defendant Boutros via cell phone text messages, with the expressed desire of paying her financial obligations to the Defendants.

32.     Despite her best efforts, however, Plaintiff had significant difficulty making payments to Defendants during the month of February 2020.

33.     On Tuesday, March 3, 2020, Boutros proposed that Plaintiff come to work for his companies, *i.e.* the Corporate Defendants, to pay off her debt. He indicated that the work would involve showing properties for lease on behalf of his companies – a role very similar to her most recent job.  Boutros invited Ms. Tejada to meet him in person to discuss the opportunity.

34.     Boutros asked Plaintiff how much she would like to be paid, and she requested eighteen dollars per hour. However, Boutros offered twenty-five dollars per hour if the Plaintiff would work naked.  At the time, Plaintiff thought Boutros was joking.

35.     However, when Plaintiff arrived at Defendants office on March 4, 2020 to begin work, Boutros was indeed naked.

36.     Boutros stated that he and his family recently had become nudists and he would be more comfortable if the Plaintiff was also naked.

37.     Plaintiff, however, had never and, to date, has never seen another member of Boutros's family naked during the entire time she has known Boutros or been one of Defendants' tenants.

38.     Boutros immediately requested Plaintiff, whose only reason for working in Boutros' office was to pay her debt as Defendants' tenant, to disrobe.

39.     Plaintiff refused but Boutros continued to coerce her.

40.     Eventually, Boutros suggested that Plaintiff "at least take her top off" and she complied.

41.     Upon information and belief, video cameras inside the Defendants' office were recording the Plaintiff either partially or fully nude, and Boutros maintains those video recordings.

42.     Late in the evening of March 4, 2020, the first day of Plaintiff's employment, Boutros texted Plaintiff asking for nude photographs of Plaintiff. She refused.

43.     On March 5, 2020 at 6:00 a.m., Boutros texted Plaintiff again requesting nude photographs and provided a separate cell phone number for her to send them to. Plaintiff did not send the photographs.

44.     Three hours later, Boutros again began badgering Plaintiff for nude photographs, despite Plaintiff's repeated refusals and assertions that she wanted to maintain a business relationship.

45.     On Thursday morning, before Plaintiff arrived at Defendants' office, Boutros again asked Plaintiff for nude photographs, and she refused.

46.     When Plaintiff arrived at the office on Thursday, March 5, 2020, for her second day of work, Boutros was again naked, again asked Plaintiff to disrobe, and again Plaintiff took her top off.

47.     Later that day, Boutros ordered food from a food delivery service. When the female delivery person arrived, a nude Boutros opened the door and held it open wide enough for the female worker to see Ms. Tejada, who was partially naked.

48.     The female delivery person asked if Boutros and Plaintiff were filming "porn." Plaintiff looked away in embarrassment hoping the delivery worker could not see her face.

49.     As Plaintiff was leaving work, Boutros asked Plaintiff for oral sex in extremely graphic terms and expressed that her breasts "are amazing." Plaintiff refused his advances.

50.     After midnight on Friday March 6, 2020, Boutros began texting Plaintiff at in horrifically graphic terms stating how aroused he had become by Plaintiff's breasts and how he pictured her providing him with oral sex.

51.     After Boutros and Plaintiff agreed that she would arrive at work at 11:30 a.m. on Friday, Boutros told Plaintiff via text not to come to work because  he was "horny" so it was not a good day for her to come in, implying that he would not be able to control himself sexually if she came to work.

52.     After Plaintiff refused Boutros' request for oral sex on Thursday and again in texts on Friday, Boutros asked Plaintiff to decide how she wished "to proceed" because if he would assume she intended to "default" on her rent payments and would need to file "eviction" for monetary damages against her in court.

53.     When Plaintiff questioned Boutros's threat to go to "go to eviction court," Boutros assured Plaintiff he was still "willing to work" with her, but it was up to her how to proceed.

54.     Boutros continued pressuring the Plaintiff for oral sex and minimizing the lewd and degrading nature of his demand that Plaintiff perform this sex act on the Defendant.

55.     Boutros promised to have Plaintiff back to work on Monday, if she provided him with oral sex that day.

56.     Plaintiff did not return to Defendants' office because she was emotionally distraught and feared for her physical safety.

57.     Boutros used Plaintiff's expressed fear of an eviction action as a threat to extort and achieve his sexual goals.

58.     The Plaintiff had a reasonable expectation, and the Defendants had a duty to deal with Plaintiff in good faith without threat, intimidation or extortion, or sexually harassing conduct regarding the unpaid balance of Plaintiff's rent.

59.     Defendants were placed in a position of trust as both landlord and employer. They abused that trust by engaging in an ongoing course of conduct in which Boutros, in his capacity as the owner of the Corporate Defendants that employed and provided residential housing to Plaintiff, threatened, coerced, intimidated, sexually harassed, and extorted the Plaintiff.

60.     Defendants actions were intentional in nature and caused her to suffer severe emotional distress.

61.     As part of their discriminatory housing practice, Defendant Boutros and Defendant RAB Land Properties, LLC intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the Fair Housing Act with respect to Plaintiff. This policy and pattern or practice includes, but is not limited to:

      a.  Making oral and written statements to Plaintiff in connection with her lease and lease payments due and owing under it that were discriminatory and harassing based on Plaintiff's sex; and

      b.  Providing different terms and conditions for Plaintiff's repayment of rent due and owing under the terms of residential dwelling lease than they did for other similarly situated male tenants.

62.     Boutros and Defendant RAB Land Properties are aware or should have been aware that federal law prohibited them from engaging in this sexually harassing and discriminatory conduct in connection with the lease of a residential dwelling, including but not limited to recovery of rent payments under such lease.

63.     Plaintiff was never paid for any of the hours she worked for Defendants.

64.     All of the work that Plaintiff performed was assigned by Defendants and/or Defendants were and are aware of all of the work that Plaintiff has performed.

65.     As part of their regular business practice, Defendant Boutros and the Corporate Defendants have intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiff. This policy and pattern or practice includes, but is not limited to:

      a.  Willfully failing to pay Plaintiff the minimum wage for all hours worked; and

    b.   Willfully failing to record all of the time that Plaintiff worked for the benefit of Defendants.

66.    All Defendants are aware or should have been aware that federal and state law required them to pay Plaintiff the minimum wage for all hours worked.

67.    The Corporate Defendants are liable under the FLSA and the Florida Minimum Wage Act for, *inter alia*, failing to properly compensate Plaintiff.

68.    Defendant Boutros, individually, is liable under the FLSA and the Florida Minimum Wage Act for, *inter alia*, failing to properly compensate Plaintiff.

**COUNT ONE**
**Violation of the Fair Housing Act of 1968**
**(against Samuel Boutros and RAB Land Properties, LLC)**

69.    Plaintiff repeats and realleges paragraphs 1 through 58, and 61 through 62 hereof, as if fully set forth herein.

70.    Section 3604(b) of the Fair Housing Act states that it is unlawful to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin."

71.    In violation of 42 U.S.C. § 3604(b), Defendants Boutros and RAB Land Properties, LLC, have discriminated against Plaintiff based on sex by providing different terms and conditions in the rental of the 4th Avenue South property referenced above in and the provision of services and facilities in connection with this dwelling.

72.    Section 3604(c) of the Fair Housing Act states that it is unlawful to "make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference,

limitation, or discrimination based on race, color, religion, sex, handicap, familial status, or national origin, or an intention to make any such preference, limitation, or discrimination."

73.     In violation of 42 U.S.C. § 3604(c), Defendants Boutros and RAB Land Properties, LLC have discriminated against Plaintiff by making statements that indicate a preference, limitation, or discrimination based on sex or an intention to make such a preference, limitation, or discrimination.

74.     Section 3617 of the Fair Housing states that it is unlawful to "coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by" Section 3604 of the Fair Housing Act.

75.     In violation of 42 U.S.C. § 3617, Defendants Boutros and RAB Land Properties, LLC have violated Plaintiff's rights by coercing, intimidating, threatening, and interfering with the exercise or enjoyment of her fair housing rights protected by the Fair Housing Act of 1968 as amended.

76.     Both Defendants are liable for the violations of Plaintiff Conny Tejada's fair housing rights protected under 42 U.S.C. §§ 3604(b) & (c) and 3617.

77.     Defendant RAB Land Properties knew or ratified the discriminatory acts of its employees or agents, specifically Defendant Boutros.

WHEREFORE, Plaintiff requests that this Court:

a.      Declare Defendant Samuel Boutros to be liable for his unlawful actions, including those specifically described in this Complaint in violation of the Fair Housing Act;

b.      Declare Defendant RAB Land Properties to be liable for his unlawful actions, including those specifically described in this Complaint in violation of the Fair Housing Act;

c.      Enter a preliminary and permanent injunction enjoining Defendants from discrimination against Plaintiff or any other person in violation of the Fair Housing Act;

d.      Orders Defendants to take appropriate affirmative action to ensure that they do not engage in these unlawful actions, including those specifically described in this Complaint, in the future.

e.      Award compensatory and punitive damages to Plaintiff against Defendant Samuel Boutros and Defendant RAB Land Properties;

f.      Award costs and attorney's fees to Plaintiff and against Defendants; and

g.      Award to Plaintiff such other relief as this Court deems just and proper.

## COUNT TWO
## Fair Labor Standards Act – Unpaid Minimum Wages

78.      Plaintiff repeats and realleges paragraphs 1 through 56, 59, and 63 through 68 hereof, as if fully set forth herein.

79.      Defendant Boutros and the Corporate Defendants failed to pay Plaintiff the minimum wages to which she is entitled under the FLSA.

80.     Defendant Boutros and the Corporate Defendants have engaged in a policy, pattern, and practice of violating the FLSA, as detailed in this Complaint.

81.     At all times relevant, Plaintiff was engaged in commerce within the meaning of 29 U.S.C. §§ 203(e), (m), and 206(a).

82.     At all times relevant, Plaintiff was an employee within the meaning of 29 U.S.C. §§ 203(e), (m), and 206(a).

83.     At all times relevant, Defendant Boutros and the Corporate Defendants have been employers engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 203(e) and 206(a).

84.     Defendant Boutros and the Corporate Defendants were required to pay Plaintiff the applicable minimum wage for all work performed.

85.     Defendant Boutros and the Corporate Defendants did not pay Plaintiff at all for the work she performed.

86.     As a result of Defendant Boutros' and the Corporate Defendants' violations of the FLSA, Plaintiff has suffered damages by being denied minimum wages in accordance with the FLSA in amounts to be determined at trial.

87.     Defendant Boutros' and the Corporate Defendants' unlawful conduct, as described in this Complaint, has been intentional and willful. Defendants were aware or should have been aware that the practices described in this Complaint were unlawful. Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiff.

WHEREFORE, Plaintiff requests that this Court enter a judgment for recovery of damages in amounts to be determined at trial, liquidated damages, prejudgment interest,

attorney's fees, costs, other compensation available under 29 U.S.C. § 216(b), and all relief that this Court deems just and proper.

### COUNT THREE
### Violation of Article X, Section 24, of the Florida Constitution –
### Unpaid Minimum Wages

88.     Plaintiff repeats and realleges paragraphs 1 through 56, 59, and 63-68 hereof, as if fully set forth herein.

89.     This is an action for damages and other relief available under Article X, Section 24, of the Constitution of the State of Florida.

90.     Article X, Section 24 states: "Employers shall pay Employees Wages no less than the Minimum Wage for all hours worked in Florida." Fla. Const., Art. X, § 24(c).

91.     Section 24 further provides: "Persons aggrieved by a violation of this amendment may bring a civil action in a court of competent jurisdiction against an Employer or person violating this amendment."   Fla. Const., Art. X, § 24(e). "Implementing legislation is not required in order to enforce this amendment." *Id*., § 24(f).

92.     Defendant Boutros and the Corporate Defendants failed to pay Plaintiff the minimum wages to which she is entitled under Article X, Section 24, of the Florida Constitution.

93.     At all times relevant, Plaintiff was an "employee" within the meaning of Article X, Section 24, of the Florida Constitution.

94.     At all times relevant, Defendant Boutros and the Corporate Defendants have been "employers" within the meaning of Article X, Section 24, of the Florida Constitution.

95.     Defendant Boutros and the Corporate Defendants were required to pay Plaintiff the applicable minimum wage for all work performed.

96.     As a result of Defendant Boutros' and the Corporate Defendants' violations of Article X, Section 24, of the Florida Constitution, Plaintiff has suffered damages in amounts to be determined at trial.

WHEREFORE, Plaintiff requests that this Court:

    a.     Declare that Plaintiff is the prevailing party in this action;

    b.     Enter judgment ordering Defendants to pay the full amount of all back wages unlawfully withheld plus the same amount as liquidated damages;

    c.     Award Plaintiff her reasonable attorney's fees and costs; and

    d.     Grant all relief that this Court deems just and proper.

## COUNT FOUR
### Florida Whistleblower Act – Illegal Solicitation

97.     Plaintiff repeats and realleges paragraphs 1 through 68 hereof, as if fully set forth herein.

98.     Defendant Boutros and the Corporate Defendants employed Plaintiff within the meaning of the Florida Whistleblower Act.

99.     Plaintiff objected to and refused to participate in the illegal activity of exchanging sexual acts for money, which violates Chapter 76 of the Florida Statutes.

100.    Plaintiff was fired in retaliation for this objection and refusal, in violation of the Florida Whistleblower Act.

101.    Accordingly, Defendant Boutros and the Corporate Defendants have violated the Florida Whistleblower Act.

102.    Plaintiff has suffered damages, including lost wages and emotional distress, as a result of Defendant Boutros' and the Corporate Defendants' violations of the Florida Whistleblower Act.

WHEREFORE, Plaintiff requests that this Court enter a judgment for compensatory damages, attorney's fees, costs, and all relief that this Court deems just and proper.

## COUNT FIVE
### Assault

103.    Plaintiff repeats and realleges paragraphs 1 through 60 hereof, as if fully set forth herein.

104.    Boutros assaulted Plaintiff by threatening to inflict injury, specifically sexual battery.

105.    At all times relevant hereto, Boutros was someone who was capable of fulfilling the threat.

106.    As a direct and proximate result of the aforementioned intentional acts of Boutros, Plaintiff suffered emotional trauma, pain and suffering, mental anguish, loss of capacity for the enjoyment of life, loss of ability to earn money into the future, and monetary loss.  The losses are either permanent or continuing in nature and Plaintiff will suffer the losses into the future.

WHEREFORE, Plaintiff requests that this Court enter a judgment for recovery of actual and compensatory damages in amounts to be determined at trial, punitive damages, and all relief that this Court deems just and proper.

## COUNT SIX
### Wage Theft

107.    Plaintiff repeats and realleges paragraphs 1 through 56, 59, and 63 through 68 hereof, as if fully set forth herein

108.    Defendant Boutros and the Corporate Defendants have failed to pay Plaintiff wages owed to her in violation of Pinellas County Ordinance Sec. 70-306.

109.    It is a violation of Pinellas County Ordinance Sec. 70-306 for any employer to fail to pay any portion of wages due to an employee, according to the wage rate applicable to that employee, within a reasonable time from the date on which that employee performed the work for which those wages were compensation, shall be wage theft.

110.    Plaintiff performed work for Defendant Boutros and the Corporate Defendants in March of 2020, for which she has never been paid.

111.    Plaintiff has been damaged by Defendant Boutros' and the Corporate Defendants' violation of Pinellas County Ordinance Sec. 70-306.

WHEREFORE, Plaintiff requests that this Court enter a judgment for recovery of three times the amount of back wages owed in accordance with Pinellas County Ordinance Sec. 70-306, and all relief that this Court deems just and proper.

## COUNT SEVEN
### Breach of Statutory Duty of Good Faith

112.    Plaintiff repeats and realleges paragraphs 1 through 59 and 60 through 62 hereof, as if fully set forth herein.

113.    Pursuant to Fla. Stat. § 83.44, a residential landlord has a duty of good faith in its performance or enforcement of any residential rental agreement.

114.    Defendant Boutros' and the Corporate Defendants' harassment of Plaintiff and the threats made against her show a breach of the Defendant Boutros' and the Corporate Defendants' duty of good faith in enforcing the rental agreement with Plaintiff.

115.    As a direct and proximate result of the aforementioned breaches of duty by Defendant Boutros and the Corporate Defendants, Plaintiff suffered emotional trauma, pain

and suffering, mental anguish, loss of capacity for the enjoyment of life, loss of ability to earn money into the future, and monetary loss. The losses are either permanent or continuing in nature and Plaintiff will suffer the losses into the future.

WHEREFORE, Plaintiff requests that this Court:

a.  Declare that Defendants are barred from enforcing the rental agreement against Plaintiff under the doctrine of equitable estoppel; and

b.  Enter a judgment for recovery of damages pursuant to Fla. Stat. § 83.55, attorney's fees in accordance with Fla. Stat. § 83.48, costs incurred in bringing this action, and all relief that this Court deems just and proper.

## COUNT EIGHT
### Intentional Infliction of Emotional Distress

116.    Plaintiff repeats and realleges paragraphs 1 through 60 hereof, as if fully set forth herein.

117.    Plaintiff, Conny Tejada, is a young female.

118.    Plaintiff, Conny Tejada, was having trouble paying her rent.

119.    Plaintiff, Conny Tejada, was afraid of being put out on the street.

120.    Defendant, Boutros was her landlord.

121.    Plaintiff, Conny Tejada, went to Defendant Boutros to seek his help in working out a monetary payment plan.

122.    Instead of agreeing to a payment plan, Defendant Boutros coerced Plaintiff into working for Defendant Boutros in a partial state of undress.

123.    Defendant Boutros further attempted to coerce Conny Tejada.

124.    Defendant Boutros made threats to Conny Tejada.

125.     Defendant Boutros engaged in the outrageous conduct of demanding that Plaintiff, Conny Tejada work in the nude in an office building.

126.     Defendant Boutros filmed Plaintiff as she worked in his offices without her consent or knowledge, capturing any state of undress in which she was forced to work and the distress that she experienced as a result of his sexually exploitative conduct.

127.     Defendant Boutros coerced Tejada into providing him with nude images of herself despite her protestations and objections.

128.     Defendant retains these visual depictions which he may use or make available for the use and viewing of others without Plaintiff's control, knowledge or consent.

129.     Defendant Boutros engaged in the outrageous conduct of exposing his genitalia to Plaintiff, Conny Tejada.

130.     Defendant Boutros engaged in the outrageous conduct of attempting to coerce Plaintiff, Conny Tejada into putting Defendant Boutros' penis in her mouth.

131.     Plaintiff, Conny Tejada finds this conduct to be vile, disgusting and outrageous.

132.     Defendant has a history where he has exposed himself to sexual disease. Boutros exploited his status as Plaintiff's employer and landlord to coerce Plaintiff into accepting this unreasonable risk to her health and safety.

133.     Conny Tejada has suffered extreme emotional trauma.

134.     Defendant Boutros' conduct is objectively outrageous.

WHEREFORE, Plaintiff respectfully requests judgment in her favor for emotional distress, compensatory damages, mental suffering, mental pain and such other general damages as the Court and the jury deem appropriate.

### JURY DEMAND

Plaintiff demands a trial by jury on all claims properly triable by a jury.

Dated this 15th day of October, 2020.        Respectfully Submitted,

/s/ Jamie Moore Marcario
Jamie Moore Marcario
Florida Bar No.: 0089366
Email: jamie@bravalaw.com
Jade Craig
Florida Bar No.: 121805
Email: jade@bravalaw.com
Secondary email:
eservice@bravalaw.com;
bravaofcounsel@bravalaw.com
Brava Business Law, PLLC
2260 Fifth Avenue South, Suite 1
St. Petersburg, FL 33712
Ph: (727) 300-1990

Stephen G. Mortimer, Esq.
Florida Bar No. 138606
Rahdert & Mortimer PLLC
535 Central Ave Ste 211
Saint Petersburg, FL 33701-3703
smortimer@rahdertlaw.com
servicemort@rahdertlaw.com
tpham@rahdertlaw.com

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY, that on the 15th day of October, 2020, I electronically filed a copy of the foregoing with the Clerk of the Court using the CM/ECF system which will send a notice of the electronic filing to all counsel of record as follows:

BEATRIZ MCCONNELL

Second Amended Complaint of Conny Tejada
Page **25** of **26**

Florida Bar No. 42119
Primary:  bmcconnell@eflegal.com
Secondary:  tdillon@eflegal.com
DAVID S. DELRAHIM
Florida Bar No. 66368
Primary: ddelrahim@eflegal.com
Secondary: creeder@eflegal.com
Secondary: afrederick@eflegal.com
**ENGLANDER and FISCHER LLP**
721 First Avenue North
St. Petersburg, Florida 33731-1954
(727) 898-7210 / Fax (727) 898-7218
*Counsel for Defendants*

.

Stephen G. Mortimer, Esq.
Florida Bar No. 138606
Rahdert & Mortimer PLLC
535 Central Ave Ste 211
Saint Petersburg, FL 33701-3703
smortimer@rahdertlaw.com
servicemort@rahdertlaw.com
tpham@rahdertlaw.com
*Co-Counsel for Plaintiff*

/s/ Jamie Moore Marcario
Jamie Moore Marcario
*Attorney for Plaintiff*